UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff,<br><br>v.<br><br>TRAMONTO VILLAGGIO HOMEOWNERS ASSOCIATION, DAISY TRUST; and ALESSI & KOENIG, LLC,<br><br>Defendants. | Case No. 2:16-cv-1897-KJD-GWF<br><br>**ORDER** |

Before the Court are two pending motions for summary judgment. Plaintiff and counterdefendant Bank of New York Mellon filed first (#60). Defendant Daisy Trust responded (#63), and BNY Mellon replied (#67). Also before the Court is defendant/counterclaimant Daisy Trust's motion for summary judgment (#61) to which BNY Mellon responded (#65), and Daisy Trust replied (#68). Co-defendant Tramonto Villaggio Homeowners Association joined Daisy Trust's motion for summary judgment (#62). However, since joining that motion, Tramonto settled its claims with BNY Mellon (#72), and the bank has dismissed its claims against Tramonto.

This is a dispute over who holds the superior interest in a home located at 9576 Trattoria Street, Las Vegas, Nevada following a homeowners association's nonjudicial foreclosure. BNY Mellon claims that its interest is superior to all others because it tendered the superpriority portion of the HOA's superpriority lien before foreclosure. Daisy Trust purchased the property at a trustee's sale and argues that the bank's tender did not preserve its deed of trust because the tender itself was invalid. Alternatively, Daisy Trust contends that the bank's quiet title claim is untimely under NRS § 11.080(3), which imposes a three-year statute of limitations on actions created by statute. As a result, Daisy Trust asserts that Tramonto's nonjudicial foreclosure

extinguished BNY Mellon's deed of trust and that Daisy Trust took the property free of the bank's interest.

Although the district is split on the applicable statute of limitations for the bank's quiet title claim, the disagreement is whether these claims are subject to a four- or five-year statute of limitations. BNY Mellon's claims are timely under either interpretation. As for the bank's tender, the Nevada Supreme Court is clear that tender of the superpriority portion of an association's lien preserves a lender's deed of trust and voids the association's foreclosure as to the lender's interest. The Court finds no reason to deviate from the Nevada Supreme Court precedent. Therefore, the Court grants BNY Mellon's motion for summary judgment and quiets title in BNY Mellon. Consequently, the Court denies Daisy Trust's motion for summary judgment and finds that Daisy Trust purchased 9576 Trattoria Street, Las Vegas, Nevada subject to BNY Mellon's valid deed of trust.

**I.    Background**

*A.  Factual Background*

The parties agree on the basic facts. In 2006, former-owner and non-party Vahag Stepanyan purchased the home at 9576 Trattoria Street in Las Vegas, Nevada. Errata to Pl.'s Mot. Summ J. Ex. A 3, ECF No. 64 ("Errata"). Stepanyan financed $629,250 with Countrywide Home Loans to purchase the property. Id. Countrywide secured its interest with a deed of trust. Id. at 2. The deed of trust listed Mortgage Electronic Registration System ("MERS") as beneficiary. Id. Three years after the purchase, MERS assigned the deed of trust to BNY Mellon. Errata Ex. B at 2. BNY Mellon claims it still holds the deed of trust.

The Trattoria Street property was part of the Tramonto Villaggio Homeowners Association and was subject to certain Covenants, Conditions, and Restrictions ("CC&Rs"). The CC&Rs required Stepanyan to pay monthly assessments for general community upkeep. See Pl.'s Mot. Summ. J. 3, ECF No. 60. At some point, Stepanyan fell behind on his assessments to the association. In November of 2010, Tramonto, through its agent Alessi and Koenig, recorded a notice of delinquent assessment lien on the Trattoria Street property. Errata Ex. C at 2. The lien revealed an outstanding delinquency of $664.22, of which $614.22 were collection costs. Id.

1   Neither Stepanyan nor BNY Mellon satisfied the delinquency, which caused Alessi and Koenig
2   to record a Notice of Default and Election to Sell. Errata Ex. E. The Notice of Default identified
3   an outstanding balance of $1,871.76. Id. at 2. When neither Stepanyan nor BNY Mellon satisfied
4   that delinquency, Alessi and Koenig recorded a notice of trustee's sale scheduled for September
5   14, 2011. Errata Ex. F at 2.

6   Before Tramonto held the trustee's sale, BNY Mellon calculated the superpriority portion
7   of the association's lien and tendered payment. At the time, Bank of America acted as servicer
8   on the Trattoria Street loan. See Miles Bauer Letter, Errata Ex. H-1. Bank of America retained
9   law firm Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer") to contact Alessi and Koenig
10  and ascertain the outstanding balance of Tramonto's superpriority lien. In January of 2011,[1]
11  Miles Bauer requested the outstanding superpriority balance from Alessi and Koenig. See Errata
12  Ex. H-1. Miles Bauer's letter to Alessi and Koenig admitted that a portion of Tramonto's lien
13  was "arguably senior" to the bank's. Miles Bauer Letter, Errata Ex. H-1. Miles Bauer also
14  communicated that the balance of the superpriority portion of the association's lien was unclear.
15  Id. Nevertheless, Miles Bauer offered to pay "that amount, whatever it is," if Alessi and Koenig
16  would disclose it. Id. In response, Alessi and Koenig provided an "amended demand statement,"
17  which itemized various attorney and collection fees and listed a total amount due of $2,847.03.
18  Demand Stmt., Errata Ex. H-2.

19  From that statement, Miles Bauer determined that nine months of assessments totaled
20  $432.00 and sent a check for that amount. Errata Ex. H-3 at 16. Alessi and Koenig rejected the
21  check and proceeded with the foreclosure. In September of 2012, Alessi and Koenig sold the
22  Trattoria Street property at trustee's sale for $9,000.00. Tr.'s Deed Upon Sale, Errata Ex. I at 2.
23  On September 25, 2012, Alessi and Koenig recorded a deed of foreclosure, listing Daisy Trust as
24  buyer. Id.

---

[1] The letter itself bears the date "February 2, 2017." However, according to Miles Bauer's internal records, the firm sent the letter to Alessi and Koenig around January 18, 2011. Miles Decl., Errata Ex. H at 3; see also Miles Bauer Bus. Records, Errata Ex. H-4. BNY Mellon explains that the discrepancy between the dates is due to the "'Automatic Date Change' function in Microsoft Word." Miles Decl., Errata Ex. H at 3.

*B. Procedural Background*

BNY Mellon brought this suit on August 10, 2016. It alleged four causes of action against three separate defendants: Tramonto Villaggio Homeowners Association, Daisy Trust, and Alessi and Koenig. The bank sought quiet title and declaratory relief against all three defendants. Compl. 7, ECF No. 1. The bank brought a breach of NRS § 116 claim and wrongful foreclosure claim against Tramonto and Alessi and Koenig only. Id. at 11–13. Finally, the bank sought injunctive relief against Daisy Trust only. Id. at 14. Tramonto and Daisy Trust each answered the complaint, and Daisy Trust asserted two counterclaims against BNY Mellon: quiet title and declaratory relief. To date, Alessi and Koenig has not participated in any meaningful way, and the Clerk of the Court has entered default against it. ECF No. 23.

In January of 2017, the parties stipulated to stay the case after Alessi and Koenig filed for bankruptcy. Stip. to Stay 2, ECF No. 25. The Court granted the stipulation and stayed the case. Order, ECF No. 26. In late 2018, BNY Mellon moved to lift the stay, which the Court granted. Order Lifting Stay, ECF No. 59. The parties concluded discovery and both BNY Mellon and Daisy Trust filed their motions for summary judgment. See ECF Nos. 60, 61. In the interim, BNY Mellon and Tramonto settled their claims. Stip. to Dismiss, ECF No. 71. Accordingly, the Court is left with BNY Mellon's and Daisy Trust's competing claims for quiet title.

**II.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

1  (1986). The Court views the evidence and draws all available inferences in the light most
2  favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d
3  1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show
4  more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

**III.    Analysis**

BNY Mellon moves for summary judgment on its quiet title and declaratory relief claims against each defendant. The bank pleaded its wrongful foreclosure and breach of NRS § 116 claims in the alternative and does not seek summary judgment on those claims. So, in essence, BNY Mellon's motion is a motion for partial summary judgment. However, if the Court grants summary judgment on the bank's quiet title claim, it will dismiss the remaining claims against Tramonto and Alessi. Daisy Trust also moves for summary judgment on its quiet title and declaratory relief counterclaims against BNY Mellon. Like BNY Mellon's claims against Tramonto and Alessi, if the Court quiets title in the bank, it must deny Daisy Trust's motion. The Court turns first to BNY Mellon's motion for summary judgment.

*A.  BNY Mellon's Motion for Summary Judgment*

BNY Mellon brings four arguments that its deed of trust survived Tramonto's nonjudicial foreclosure. First, the bank argues that it cured Tramonto's delinquency when it tendered a check for nine-months' worth of assessments. Second, the bank argues that NRS § 116 is facially unconstitutional. Third, if NRS § 116 is not facially unconstitutional, it was unconstitutional as applied to BNY Mellon here. And finally, the bank argues that Tramonto's trustee's sale was so unfair or oppressive that Shadow Canyon justifies equitably unwinding the sale. See Nationstar Mortg., LLC v. Saticoy Bay, LLC Series 2227 Shadow Canyon, 405 P.3d 641 (Nev. 2017). Because the Court finds BNY Mellon's tender argument dispositive, it need not reach the bank's remaining arguments.

*1.  Statute of Limitations*

Before reaching the merits of BNY Mellon's motion, Daisy Trust urges the Court to deny the motion as untimely. Daisy Trust argues that BNY Mellon's quiet title and declaratory relief claims are subject to a three-year statute of limitations, which began accrual at the time

- 5 -

Tramonto foreclosed—September 25, 2012. If a three-year statute of limitations applies, the bank had until September 25, 2015 to bring its claims. BNY Mellon filed its complaint on August 10, 2016. Accordingly, Daisy Trust argues that BNY Mellon's claims are time-barred. The crux of Daisy Trust's argument is that BNY Mellon's claims are not true quiet title claims because the bank never actually held title in the property. Def.'s Resp. Summ. J. 2, ECF No. 63. The bank is actually "seeking validation of its lien rights," which is a right created by statute. Id. at 2–3. According to NRS § 11.190, the applicable statute of limitations for liability created under statute is three years. NRS § 11.090(3)(a). Daisy Trust, therefore, claims that BNY Mellon's claims are time-barred.

Daisy Trust is incorrect. Admittedly, courts in this district disagree on the appropriate statute of limitations for this type of quiet title claim. BNY Mellon does not allege that it ever held title. Rather, the bank uses the quiet title claim as a vehicle to assert the validity of its preexisting interest in the Trattoria Street property. Despite the district's split, no Court has found that a three-year statute of limitations is appropriate for these claims.[2] They disagree whether a four-year or a five-year limitations period applies.[3] The disagreement boils down to whether a quiet title claim in the context of a nonjudicial foreclosure constitutes a claim to *recover* property under NRS § 11.080.[4] If so, a five-year limitations period applies. Both the

---

[2] Daisy Trust points to Bank of New York Mellon v. Tierra De Las Palmas Owners Association to support a three-year limitations period. No. 2:17-cv-2112-JAD-CWH, 2018 WL 2292525 (D. Nev. May 18, 2018). However, the portion of that order that Daisy Trust cites is discussing the statute of limitations for wrongful foreclosure claims and breach of NRS § 116 claims, not quiet title claims. Id. at *3–4. In fact, that order did not determine the applicable statute of limitations for quiet title claims because the bank's claims were untimely even under a five-year limitations period. Id. at *2.

[3] Compare Bank of New York Mellon v. Khosh, No. 2:17-cv-0957-MMD-PAL, 2019 WL 2305146 (D. Nev. May 30, 2019) (applying five-year statute of limitations to quiet title claim under NRS § 11.070); Newlands Asset Holding Tr. v. SFR Invs. Pool 1, LLC, No 3:17-cv-0370-LRH-WGC, 2017 WL 5559956 (D. Nev. Nov. 17, 2017) (same); Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n, No. 2:15-cv-1287-RCJ-NJK (D. Nev. June 14, 2017) (same); HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc., No. 2:16-cv-0242-JCM-GWF, 2017 WL 937723 (D. Nev. Mar. 9, 2017) (same) with U.S. Bank v. SFR Invs. Pool 1, LLC, --- F.Supp.3d ---, 2019 WL 1383265 (D. Nev. Mar. 27, 2019) (applying four-year catchall provision under NRS § 11.220); Nationstar Mortg., LLC v. Safari Homeowners Ass'n, No. 2:16-cv-0542-RFB-CWH, 2019 WL 121960 (D. Nev. Jan. 6, 2019) (same); Bank of America, N.A. v. Country Garden Owners Ass'n, No. 2:17-cv-1850-APG-CWH, 2018 WL 1336721 (D. Nev. Mar. 14, 2018).

[4] "No action for the recovery of real property, or for the recovery of the possession thereof other than mining claims, shall be maintained, unless it appears that the plaintiff or the plaintiff's ancestor, predecessor or grantor was seized or possessed of the premises in question, within five years before the commencement thereof."

Ninth Circuit and the Nevada Supreme Court have applied a five-year statute of limitations to these quiet title actions. See Weeping Hollow Ave. Tr. v. Spencer, 831 F.3d 1110, 1114 (9th Cir. 2016 ) (party may bring claim challenging the HOA foreclosure within five years of the sale); Las Vegas Dev. Grp., LLC v. Blaha, 416 P.3d 233, 237 (Nev. 2018) (a claim "seeking to quiet title . . . is governed by NRS § 11.080, which provides for a five-year statute of limitations").

Nevertheless, a minority of courts have determined that § 11.080 does not apply to this type of quiet title claim because the bank or lender never actually held title—nor do these banks claim to have ever held title. See U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC, 376 F.Supp.3d 1085, 1089–91 (D. Nev. 2019). Those courts have found that NRS § 11.220's so-called "catch-all" provision imposes a four-year statute of limitations because the bank cannot recover property to which it never held title. See NRS § 11.220 (where the Nevada Revised Statutes are silent regarding a statute of limitations, a four-year period applies).

In any event, the Court need not resolve this dispute here. BNY Mellon's claims are timely under either § 11.220's four-year catch-all provision or § 11.080's five-year period for recovery of real property. At the latest, BNY Mellon's claims began accrual on September 25, 2012, when Alessi and Koenig recorded the trustee's deed upon sale. See G & H Assocs. v. Ernest W. Hahn, Inc., 934 P.2d 229, 233 (Nev. 1997) (accrual begins when the plaintiff first knew or should have known of the injury). BNY Mellon brought this suit in August of 2016—less than four years from the date of accrual. Therefore, the Court need not definitively decide whether BNY Mellon's quiet title claim is subject to a four-year or five-year statute of limitations because its claim is timely under either.

    *2. Tender*

BNY Mellon argues that its tender of the superpriority portion of Tramonto's lien before the association's foreclosure preserved its deed of trust from extinguishment. The bank's argument hinges on the check that Miles Bauer sent Alessi and Koenig after receiving the association's notice of foreclosure. In response to that notice, Miles Bauer contacted Alessi and Koenig and requested the superpriority balance and offered to pay whatever that balance was. Alessi responded with an "amended demand statement" that itemized all the outstanding fees on

the property's account. From that statement, Miles Bauer calculated nine months of association assessments and remitted Alessi and Koenig a check for that amount. Alessi and Koenig rejected the check and foreclosed anyway.

The Nevada Supreme Court has addressed whether valid tender preserves a lender's deed of trust in a series of recent cases. In Bank of America, N.A. v. SFR Invs. Pool 1, LLC, the Court definitively held that a lender's valid tender prior to the association's foreclosure preserves the lender's first deed of trust. 427 P.3d 113, 118 (Nev. 2018) ("Diamond Spur"). Tender is valid if (1) it pays the entire superpriority lien (id. at 117) and (2) it is unconditional or insists only on conditions the tendering party has a right to insist upon (id. at 118). The tendering party is under no obligation to "keep [the tender] good" or deposit the tender into an escrow or court-established account. Id. at 120–21. At bottom, valid tender voids the association's foreclosure of the superpriority portion of the association's lien, which results in the buyer taking the property subject to the lender's first deed of trust. Id. at 121.

Then, in Bank of America, N.A. v. Thomas Jessup, LLC Series VII, the Nevada Supreme Court reaffirmed the tender rule and carved out an exception where an association makes clear that it will reject tender. 435 P.3d 1217 (Nev. 2019). Thus, a lender can preserve its deed of trust against an association's foreclosure by calculating the superpriority balance and tendering payment for that amount. Diamond Spur, 427 P.3d at 117. Or, even if money never changes hands, the lender's deed of trust survives foreclosure if it attempted to tender payment, but the association rejects that payment. Thomas Jessup, 435 P.3d at 1220. This Court has adopted the Nevada Supreme Court's reasoning. See RH Kids, LLC v. MTC Fin., 367 F.Supp.3d 1179, 1185–86 (D. Nev. 2019); Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC, No. 2:17-cv-0457-KJD-GWF, 2018 WL 5019376 (D. Nev. Oct. 16, 2018).

The facts here are similar to Diamond Spur, and the result is the same; BNY Mellon's deed of trust survived the association's foreclosure. Daisy Trust brings a litany of arguments challenging Miles Bauer's tender. Those arguments break down into three main groups. First, Daisy Trust argues that equitable subrogation prevented the bank from preserving its deed of trust because, by paying the superpriority lien, the bank assumed the position of former-owner

Vahag Stepanyan. Second, Daisy Trust argues that BNY Mellon's deed of trust must be extinguished because Daisy Trust was an innocent third-party purchaser. Finally, Daisy Trust challenges the validity of the tender itself and the admissibility of BNY Mellon's evidence of that tender. Daisy Trust claims that the bank's records have not been adequately authenticated and that the tender check is invalid because it was not a cashier's check.

None of Daisy Trust's arguments dissuade the Court from applying Diamond Spur and finding for BNY Mellon. First, in the nonjudicial-foreclosure context, equitable subrogation would not prevent Miles Bauer from satisfying Tramonto's superpriority lien. Equitable subrogation allows a person who pays off someone else's encumbrance to "assume the same priority position as the holder of the previous encumbrance." Houston v. Bank of America, 78 P.3d 71, 73 (Nev. 2003). In effect, the party paying the debt on behalf of another may "leap-frog over an intervening lien holder." Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 539 (Nev. 2010). Through subrogation, a junior lienholder may satisfy a senior lienholder's encumbrance and ascend to the senior lienholder's priority position. Houston, 78 P.3d at 73.

However, Diamond Spur is clear that a bank's tender of the superpriority lien extinguishes that lien and preserves the bank's deed of trust. 427 P.3d at 121. There, the bank's valid tender *cured* the default as to the superpriority portion of the HOA's lien. Equitable subrogation did not prevent curing the delinquency as Daisy Trust suggests. Daisy Trust acknowledges this but fails to distinguish Diamond Spur from this case. Instead, it argues the Nevada Supreme Court got Diamond Spur wrong. See Def.'s Opp. to Pl.'s Mot. Summ. J. 8, ECF No. 63 ("It cannot be the case that the Nevada Supreme Court intended to disrupt more than 150 years of established law and jurisprudence respecting [equitable subrogation]"). This case is neither the time nor the place to challenge the Nevada Supreme Court's Diamond Spur decision. And this Court is bound by the Nevada Supreme Court's interpretation of the applicability of equitable subrogation as it relates to NRS § 116. See Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 939 (9th Cir. 2001). Accordingly, the Court rejects Daisy Trust's argument that equitable subrogation prevented BNY Mellon from preserving its deed of trust through valid tender.

Next, Daisy Trust argues that its status as an innocent bona fide purchaser protects its interest at the bank's expense. It points to Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bankcorp, Inc. for support. 366 P.3d 1105 (Nev. 2016). The Shadow Wood court, however, confronted different facts than these. There, the Nevada Supreme Court reviewed a lower court decision that equitably set aside a foreclosure as unreasonable or oppressive. Id. at 1109. Although a district court may exercise its equitable authority to set aside an unjust foreclosure sale, the bank failed to demonstrate that the foreclosure sale was so defective that it must be set aside. Id. at 1114. The Supreme Court also found that *when a court sits in equity*, it should not grant relief "to the possible detriment of innocent third parties." Id. at 1115 quoting Smith v. United States, 373 F.2d 419, 424 (4th Cir. 1966).

Unlike Shadow Wood, BNY Mellon's tender argument does not require this Court to sit in equity. To the contrary, the Court has determined that Tramonto's foreclosure did not extinguish BNY Mellon's deed of trust because the bank cured the superpriority default before the foreclosure. While the Court is aware of the effect its decision has on Daisy Trust, its third-party status did not prevent BNY Mellon from preserving its deed of trust. Therefore, because the Court is not sitting in equity, it need not consider the balance of equities nor the effects of its decision on a third-party.

Likewise, Daisy Trust's status as a bona fide purchaser does not matter here. Diamond Spur is again instructive. Where a lender has cured the superpriority default, the association has no authority to foreclose. Any resulting foreclosure is void as to the superpriority lien. Diamond Spur, 427 P.3d at 121. When Miles Bauer cured Tramonto's outstanding default, Tramonto lost all power to convey that portion of its interest in the property. Id. Therefore, whether Daisy Trust was a bona fide purchaser for value is irrelevant.

Finally, BNY Mellon's offer of tender was valid, and the evidence of that tender is admissible. Daisy Trust contends that Miles Bauer's offer of tender was invalid because it was improperly conditional and because the bank failed to send a cashier's check. The Court is not persuaded. First, a conditional tender is not per se invalid. If the tender is conditional, the tendering party must have the right to insist on the conditions. Diamond Spur, 427 P.3d at 118.

Nevertheless, Daisy Trust argues that the conditions of this tender violate NRS § 116 because they would require Tramonto to waive any right to the nuisance or abatement fees that § 116 permitted them to collect. Def.'s Opp. to Pl.'s Mot. Summ. J. 14, ECF No. 63. Setting aside that Daisy Trust has not submitted evidence that BNY Mellon owed nuisance and abatement charges in this case, the Nevada Supreme Court has already found that such offers of tender do not violate § 116. Diamond Spur and Thomas Jessup both analyzed offers of tender that were nearly identical to the offer of tender in this case. See Diamond Spur, 427 P.3d at 118; Thomas Jessup, 435 P.3d at 1218–19. Neither offer offended § 116, and this Court finds no reason to deviate from that determination.

Likewise, Miles Bauer's use of a traditional trust-account check, as opposed to a cashier's check, does not invalidate its offer of tender. The bank is under no obligation remit payment in a certain way to keep its tender good. While Diamond Spur did not confront this issue head-on, it found that the "statutory [law] and common law of the jurisdiction" govern the form and method of valid tender. 427 P.3d at 120. Daisy Trust's argument rests on an inconsistency between Miles Bauer's tender letter and the actual check. The letter promised a cashier's check, but the firm sent a standard trust-account check. Neither Nevada's statutory law nor its common law dictates that valid tender cannot be a standard check. Further, while not binding on this Court, the Nevada Court of Appeals has come to the same conclusion. That Court recently held that "NRS chapter 116 does not require a cashier's check." Chinatown St. Tr. v. Bank of America, N.A., No. 74545-COA, 2018 WL 6609590, at *1 (Nev. Ct. App. Dec. 7, 2018) citing Diamond Spur, 427 P.3d at 120–21. Therefore, Miles Bauer's decision to send a trust-account check instead of a cashier's check does not invalidate its tender.

Finally, the Court finds no defect with BNY Mellon's evidence. Daisy Trust argues that BNY Mellon failed to authenticate the account ledger that Miles Bauer used to calculate nine-months of Tramonto's past-due assessments. The argument is two-fold: the account statement is inadmissible hearsay and Miles Bauer's affidavit authenticating the statement is defective because Miles Bauer was not custodian of records for Tramonto. Neither argument renders these documents inadmissible. First, the business records exception does not require that the custodian

1   of record for the business that created the document authenticate that document. See MRT Const.
2   Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998). Like here, an official from another
3   entity who relied upon the accuracy of the business record may properly authenticate it. Id.; see
4   also Fed. R. Evid. 803(6). Accordingly, Alessi's account statement is not inadmissible hearsay.

At this stage, BNY Mellon need only make a prima facie showing of authenticity so that a reasonable jury can determine authenticity. United States v. Estrada-Eliverio, 583 F.3d 669, 673 (9th Cir. 2009). BNY Mellon has met that burden with the Miles affidavit. Mr. Miles had adequate knowledge and information to authenticate these business records. Miles stated he was "familiar with the type of records maintained by Miles Bauer in connection with [this] loan." Errata Ex. H 2, ECF 64. He "[had] personal knowledge of Miles Bauer's procedures for creating and maintaining these business records," and he "personally confirmed that the information [in the account statement was] accurate." Id. at 3. Mr. Miles, therefore, properly authenticated both the Miles Bauer documents and Alessi's account statement. The Court, therefore, overrules Daisy Trust's objection to BNY Mellon's evidence.

In sum, BNY Mellon's deed of trust survived Tramonto's trustee's sale because the bank's tender cured the superpriority lien balance before foreclosure. That tender voided Tramonto's foreclosure as to BNY Mellon's interest in the property. Therefore, Daisy Trust acquired the property subject to BNY Mellon's existing deed of trust.

B.  *Daisy Trust's Motion for Summary Judgment*

Daisy Trust seeks summary judgment on its quiet title and declaratory relief claims against BNY Mellon only. The motion hinges on the timeliness of BNY Mellon's complaint. Daisy Trust urges the Court to apply a three-year statute of limitations and find reject the bank's claims as time-barred. Having found that either a four- or five-year limitations period applies here and having found that the bank's claims would be timely under either, the Court denies Daisy Trust's motion.

C.  *BNY Mellon's Remaining Wrongful Foreclosure and Breach of NRS § 116 Claims*

After granting BNY Mellon's motion and finding that its deed of trust survived Tramonto's foreclosure, only BNY Mellon's claims for wrongful foreclosure and breach of NRS

§ 116 against Alessi and Koenig and Tramonto and the bank's injunction claim against Daisy Trust remain. As for BNY Mellon's wrongful foreclosure and breach of NRS § 116 claims, the bank pleaded those claims in the alternative to its quiet title and declaratory relief claims. Because the Court has granted judgment on the bank's quiet title claim, it need not consider alternative claims. Accordingly, BNY Mellon's wrongful foreclosure and breach of NRS § 116 claims against Tramonto and Alessi and Koenig are dismissed.

Likewise, the Court dismisses BNY Mellon's injunctive relief claim against Daisy Trust. Although styled as a stand-alone cause of action here, an injunction is a remedy. See Jensen v. Quality Loan Svc. Corp., 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010); In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F.Supp.2d 1091, 1130 (D. Nev. 2007). Additionally, an injunction at this point is unnecessary. The Court has already quieted title and provided the declaratory relief the bank sought. Therefore, the Court dismisses BNY Mellon's injunctive relief claim against Daisy Trust.

### IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiff/counterdefendant BNY Mellon's renewed motion for summary judgment (#60) is **GRANTED**. The Court declares that BNY Mellon's deed of trust in the property located at 9576 Trattoria Street, Las Vegas, Nevada survived Tramonto Villaggio Homeowners Association's nonjudicial foreclosure. The Court also declares that whatever interest Daisy Trust acquired in the property it takes subject to BNY Mellon's first deed of trust.

IT IS FURTHER ORDERED that defendant/counterplaintiff Daisy Trust's motion for summary judgment (#61) is **DENIED**;

IT IS FURTHER ORDERED that Tramonto Villaggio Homeowners Association and Alessi and Koenig are **DIMSSED** as BNY Mellon's claims against them were pleaded in the alternative to its quiet title and declaratory relief claims.

///
///
///

The Clerk of the Court shall **ENTER JUDGMENT** in favor of plaintiff/counterdefendant BNY Mellon and against defendant/counterplaintiff Daisy Trust. Dated this 31st day of July, 2019.

_____
Kent J. Dawson
United States District Judge